**R. F. JORDAN, D/B/A Jordan Construction Company, Appellant,**

v.

**CITY OF BEAUMONT, Appellee.**

No. 6346.

Court of Civil Appeals of Texas.

Beaumont.

June 16, 1960.

Rehearing Denied July 6, 1960.

Hofheinz, Sears, James and Burns, Will Sears, Robert L. Burns, Houston, for appellant.

King, Sharfstein & Rienstra, George Murphy, City Atty., Beaumont, for appellee.

McNEILL, Justice.

The action was instituted by appellant against appellee, herein sometimes referred to as City, to recover his bid deposit or guaranty of $8,500 which represented 5 percent of the bid he had made in response to a call for bids by appellee for the installation of a certain water main in the City of Beaumont. Five bids were submitted on this project and they were opened by the City Council on July 9, 1957. Appellant's bid for the project was $169,023.40. This figure made him the lowest bidder by a considerable margin. The Council took the bids under advisement until July 16, 1957 and in the meantime appellant rechecked the calculations of his bid and discovered that he had made a mistake in transposing figures from his work sheets to the bid form resulting in the omission of $27,260 from his total bid. Appellant, who lives in Houston, telephoned George Schaumburg, Consulting Engineer for the City on the project, and made an appointment to see him about the matter. He wrote a letter to Mr. Schaumburg advising him of the error made in his calculations and asked that his bid be withdrawn. His letter was dated July 12th and was delivered to Mr. Schaumburg in Beaumont on the morning of July 12th. About the same time appellant delivered to the City Manager a letter addressed to the City and its officials advising them of his mistake and requesting that his bid be withdrawn.

City Council met on July 16th and although having appellant's letter requesting his bid be withdrawn before it, proceeded to accept his bid and award the contract for the improvements to him, upon Mr. Schaumburg's recommendation. While appellant's letter was read by the Council, appellant, who attended this meeting, made no additional request there that his bid be withdrawn. Immediately, however, after the meeting was adjourned he and Mr. Schaumburg held a conference and Schaumburg urged him to carry out the contract. Both Mr. Schaumburg and appellant testified at the trial below and the evidence showed that appellant was persuaded to carry out his contract provided he could make the performance bond required in the contract documents. Mr. Schaumburg told appellant that he felt for appellant's standing and reputation as a contractor it would be well if he proceeded with the contract even though he would only break even or lose something on the project. Appellant told Mr. Schaumburg since he had made this material mistake it would be difficult to obtain a surety company to go his bond. The facts show that he did make a reasonable attempt to obtain bond but failed to do so although the City gave him an extension of time therefor.

On August 8th he advised the City that he was unable to make performance bond and the City Council on August 13th forfeited his bid deposit.

Appellant thereupon made demand upon the City for the return of his deposit, and having been refused, instituted this suit alleging that he acted in good faith and exercised reasonable care in submitting the bid but through inadvertence the mistake occurred, notwithstanding such care. Appellee answered that appellant after having discovered his mistake nevertheless by action and conduct reaffirmed and ratified the contract and waived his right to withdraw his bid, and because thereof, he is estopped to allege error or mistake. In addition, the City filed a cross action asserting that as a result of appellant's failure to perform his contract with the City it had to readvertise for bids at an expense of $1,000 and the work was then let for $203,063.90, a substantially higher price, and that consequently the City was damaged in the sum of $35,040.50, that being the difference between appellant's bid and the amount the project was let for, plus $1,000 expenses of readvertising for bids.

Five special issues were submitted to the jury. Their answers to the first three were: 1. Appellant intended to include an additional amount of $2.38 per lineal foot in his unit bid for Item 1–A, 2. Appellant's failure to include such additional amount was the result of an honest mistake, 3. Such mistake was not due to the failure of appellant to exercise ordinary care and prudence. Issues Nos. 4 and 5 with the jury's answers are:

"Special Issue No. 4

Do you find from a preponderance of the evidence that after R. F. Jordan discovered his mistake or error, if any, he ratified the bid proposal which he made to the City of Beaumont under date of July 9, 1957? Answer "Yes" or "No". Answer: No.

By the term "ratified", as used in the foregoing issue, is meant the doing of some act, with full knowledge of the facts rendering a prior act invalid, with the intention of giving validity to such prior act.

Special Issue No. 5

Do you find from a preponderance of the evidence that after R. F. Jordan discovered his error or mistake, if any, he nevertheless decided to perform the obligations and duties under the bid proposal made to the City of Beaumont under date of July 9, 1957? Answer "Yes" or "No". Answer: Yes."

Appellant filed his motion to disregard the jury's finding to Special Issue No. 5 as being without support in the evidence and, disregarding such finding, for judgment on the verdict; and the City filed motion for judgment on the verdict. The trial court overruled appellant's motion and granting

the City's motion adjudged that appellant recover nothing from the City, to which action appellant excepted. The court further overruled the City's motion for judgment on its cross action and adjudged that it take nothing against appellant thereon to which action the City excepted.

His motion for new trial complaining of the part of the judgment against him having been overruled, appellant perfected his appeal therefrom and has filed his brief containing four points. While the City excepted to that part of the judgment adverse to it, it has perfected no separate appeal but has filed its brief answering appellant's points and has filed four crosspoints of error urging its right to recover damages on its cross action against appellant for breach of his contract.

Without stating separately appellant's points, it is sufficient to say they urged that the trial court committed error in submitting Special Issue No. 5 because there was no evidence justifying its submission and because it is not a controlling but evidentiary issue. By its counter points the City maintains exactly the opposite.

■ No attack is made upon the findings of the jury in answer to the first three issues. We accept, therefore, the facts that appellant made an honest mistake in his bid and in doing so he was not negligent. This would establish his right to a return of his bid deposit. James T. Taylor & Son v. Arlington Ind. Sch. Dist., Tex., 335 S.W.2d 371; State Highway Comm. v. Canion, Tex.Civ.App., 250 S.W.2d 439. Unless it was shown that appellant after discovering his mistake ratified the bid proposal or waived his right to withdraw it.

■■ To present appellee's defense the able trial judge submitted Issue No. 4 and the accompanying definition of the term "ratified". No complaint is made to this action of the court. The issue actually submits both defenses of "ratification" and "waiver". Carlile v. Harris, Tex.Civ.App., 38 S.W.2d 622. These two terms have been used interchangeably many times. At least, for the purposes of this case, ratification and waiver invoke the same factual elements: (1) There must be full knowledge of the known right which vitiates a prior act, and (2) there must be an intentional relinquishment of the known right, or intentional recognition of the prior act, depending upon the user's choice of words. While to relinquish is the gist of "waiver" and to approve is the gist of "ratification", to relinquish a known right is to give validity to the prior act and to approve a prior act is to relinquish a known right.

■ The trial court submitted Issue No. 5 over objection of appellant that an affirmative answer thereto will not form a basis upon which to find the existence of a contract but was merely evidentiary, and over objection of appellee that the evidence is wholly insufficient from which the jury could make a finding that appellant, after discovering his mistake, did not decide to perform his contract. The court erred in submitting the issue and rendering judgment on the answer thereto. All the testimony of appellant that he was agreeable to proceed with the contract was contingent upon his making the performance bond. His testimony in this respect was not countered by any witness, and his acts done were consistent with this view. There were some circumstances indicative of equivocation, but they were not of clear and decisive nature to establish ratification as a matter of law, Corrin v. Slagle, Tex.Civ.App., 300 S.W.2d 657, and the jury's finding in answer to Issue No. 4, settled the matter in appellant's favor. That he "decided" to go forward if he could make bond was his testimony. Issue No. 5 was not framed to inquire of this feature of the evidence and it left the jury in the dilemma to find either an unconditional decision, as it did, or that no decision at all was made. If the court had in mind appellant's statement as a witness that he "decided" to perform the contract without affixing the condition, it was not supported by the evidence, since no witness testified he decided to proceed except upon that basis. If in giving the

issue the court was inquiring of Jordan's mental conclusion, it was an indeterminate issue and therefore evidentiary. Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090. The term "decide" as applied to an individual means to determine, to form a definite opinion, to come to a conclusion, to make up one's mind. 26 C.J.S. p. 40. The term, therefore, goes no further than reaching a mental conclusion. That Jordan had made up his mind to carry out the contract uncommunicated to another person is an incomplete act of ratification or waiver. A mental conclusion in and of itself in matters involving the issue of waiver and ratification cannot be held to be sufficient upon which to predicate action of the court. 92 C.J.S. p. 1061. It was so plainly said of this in Atlas Life Ins. Co. v. Schrimsher, 179 Okl. 643, 66 P.2d 944, at page 948, we quote therefrom: "An individual cannot waive his rights by words spoken to himself, which no third person hears, or by conduct which is never seen; nor should an organization of individuals be held to a waiver by an arrangement entirely within the entity of the organization."

▇ It occurs to us that if we followed appellee's argument and sustained the action of the lower court in rendering judgment upon Issue No. 5 and its answer, we would be putting the stamp of approval upon a direct conflict between the jury's answer to Issue No. 4 and its answer to Issue No. 5, for by the 4th issue the jury found there was no ratification, while by the 5th issue it found that appellant decided to perform his obligations and duties under the bid proposal to enter upon and perform the contract, which after all is but a finding of ratification. It is the court's duty to reconcile the apparent conflicts in the answers made if this can be reasonably done in the light of the pleadings and evidence and the manner in which the issues were submitted. 41–B Tex.Jur. 798–801. Whether Issue No. 5 has no support in the evidence or whether it is purely evidentiary, as pointed out in the paragraph next above, the conflict is eliminated under the rule stated.

▇ Before we quit the question of ratification notice should be taken of the City's contention:

"Appellant concerns himself to a great extent with the fact that everything enumerated above done by him was all *contingent* upon his being able to get someone to write the performance bond. What appellant apparently overlooks is that the requirement to have a performance bond within ten days after acceptance of the bid was part and parcel of his agreement with Appellee under the bid proposal. This requirement would have had to have been fulfilled whether any mistake were made or not. In pursuing this course, Appellant was simply acting in such a way as to recognize the continued existence and validity of his bid proposal, disregarding any vitiating element that existed prior to that time."

The answer to this, we think, lies in the fact that a material mistake was made justifying the bid withdrawal. This was done. Appellant, therefore, was at liberty to attach the stated condition to his waiver of his right to withdraw the bid. It was only natural that bonding companies would hesitate to underwrite performance of one who would find it costly to perform, and this no doubt caused appellant to be cautious of his commitment. In persuading appellant to undertake the work conditioned upon making bond, Mr. Schaumburg rendered the City a service; if the condition had been fulfilled the City would have saved a nice sum and both parties have avoided litigation. And as it turned out, failure to make bond entailed no long delay nor material inconvenience to the City. In this connection we mention there was no evidence tendered as to cost of readvertising for bids.

▇ Appellant has filed a supplemental brief objecting to our consideration of the City's cross-points because no separate appeal was taken by it. Since the judgment against appellant is severable from that against the City on its cross action and

he appealed from only that portion of the judgment against him, appellant's position is correct. Connell Const. Co. v. Phil Dor Plaza Corp., Tex., 310 S.W.2d 311; Maxwell v. Harrell, Tex.Civ.App., 183 S.W.2d 577.

The judgment of the trial court decreeing that appellant take nothing by his suit is reversed and it is adjudged that appellant R. F. Jordan, D/B/A Jordan Construction Company, do have and recover the sum of $8,500, the amount of his bid guaranty, from the City of Beaumont, with interest from May 28, 1959 at 6% per annum and all costs.

Reversed and rendered.