**James C. CALDWELL and Warren A. Burnett, Appellants,**

**v.**

**CALLENDER LAKE PROPERTY OWNERS IMPROVEMENT ASSOCIATION, Appellee.**

**No. 06–94–00038–CV.**

Court of Appeals of Texas, Texarkana.

Nov. 1, 1994.

Rehearing Overruled Sept. 27, 1994.

Second Motion for Rehearing Overruled Nov. 22, 1994.

eight points of error in which they contend that the trial court erred in rendering summary judgment because (1) the trial court did not have jurisdiction over all persons who have or claim any interest that would be affected by the declaratory judgment; (2) there are issues of material fact to be decided; (3) the trial court erred as a matter of law in striking their response to the motion for summary judgment; (4) the evidence is insufficient to support the award of attorney's fees; (5) the trial court erred in not preparing and filing findings of facts and conclusions of law as requested; and (6) the trial court erred in determining that Caldwell had knowledge of the final judgment within twenty days after it was signed.

Callender Lake is a residential subdivision. A maintenance fund agreement requires the landowners to each pay the Callender Lake Property Owners Improvement Association an annual maintenance fee of $10 for a period of twenty-five years beginning January 1, 1967, and for automatic extensions of ten years thereafter. Pursuant to a vote of the lot owners, the Association increased the annual fees in 1986 and again in 1991. The last vote increased the fees to $200 for lots with houses and $40 for lots without houses.

Caldwell and Burnett, landowners, filed a suit in which they contended that the election under which the fees were increased was not held in accordance with the controlling language of the deed restrictions that set up the maintenance fund agreement. The Association counterclaimed, requesting a declaration that the maintenance fund agreement controls over the restrictions in ·setting out the terms and requirements of an election to increase the maintenance fee.

Harold A. Ellard, Dallas, for appellants.

Carter W. Tarrance, Athens, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

James Caldwell and Warren Burnett appeal from a summary judgment. They raise

Burnett contended in his petition and arguments before the trial court that he personally possessed a petition containing signatures of a large number of residents of the subdivision who were of like mind and wished to contest the rate increase. He and Caldwell were directed to produce this petition in discovery. In findings of fact following a sanctions hearing, the trial court stated that Burnett had refused to produce the document and that he had personally burned the

document containing the signatures in his fireplace. The court also found that Caldwell refused to produce the petition because he had promised not to reveal the names on the petition. The trial court was mightily perturbed.

After the hearing, the trial court entered findings of fact and conclusions of law that stated, among other things, that counsel had no responsibility for the errant acts of his client and sanctioned both Burnett and Caldwell by dismissing their action against the Association. No complaint is made of that sanction.

Thereafter, the Association continued to prosecute its counterclaim for declaratory judgment against Caldwell and Burnett. In a document entitled partial summary judgment, the trial court struck Caldwell and Burnett's response to the Association's motion for summary judgment and granted the Association's motion for summary judgment finding that, among other things, the relevant instruments only require a majority affirmative vote of the lot owners voting 'to increase the maintenance charge and that two classes of maintenance charges could be created. The summary judgment further stated that trial would be held on the issue of attorney's fees on September 13, 1993. An additional order was signed on that date setting attorney's fees at $5,000 and ordering Caldwell and Burnett to pay that amount to the Association.

TIMELINESS OF THE APPEAL

We first address the Association's contention that Caldwell's appeal was not timely perfected. Affidavits by the district clerk, affidavits of the parties, and a hearing held before the trial court all show that notice of the judgment was not sent out by the district clerk as required by Tex.R.Civ.P. 306a. The trial court made findings of fact pursuant to Tex.R.Civ.P. 306a in which it found that Caldwell personally had actual notice of the judgment as of October 2, 1993 (within twenty days of the judgment), but that neither Burnett nor his counsel received notice of the judgment until October 20.

Caldwell challenges the sufficiency of the evidence to support the trial court's finding of the date that he received notice of the judgment. In reviewing the factual sufficiency of the evidence, we examine all of the evidence and will set aside the trial court's finding only if it is so against the great weight and preponderance of the evidence that the finding is manifestly unjust. *Welborn Mortgage Corp. v. Knowles,* 851 S.W.2d 328 (Tex.App.–Dallas 1993, writ denied). In reviewing the legal sufficiency of the evidence, we first examine the record for evidence that supports the finding while ignoring all evidence to the contrary. If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Holley v. Watts,* 629 S.W.2d 694 (Tex.1982); *Hot Shot Messenger Service v. State,* 798 S.W.2d 413, 415 (Tex.App.–Austin 1990, writ denied).

The trial court held an evidentiary hearing in regard to this motion, although a hearing is not explicitly provided by Rule 306a. Caldwell testified at this hearing that on October 2 he was present at a meeting of the Association and heard an individual claim that a judgment had been rendered in the case in favor of the Association. He further testified that he thought she was lying. The law charges one who has knowledge of facts that would cause a prudent man to inquire further to do so. *Knowles,* 851 S.W.2d at 331. Sitting as the fact finder, the trial court clearly believed Caldwell's statement, as well as the supporting testimony to the effect that the board members of the Association had in fact read the judgment aloud at the October 2nd meeting and that Caldwell was present at the meeting. This constitutes some evidence and sufficient evidence to support the trial court's findings on these matters.

In applying the facts found by the trial court and determining the appellate timetable, an unusual interplay between Tex.R.Civ.P. 306a and Tex.R.App.P. 41 exists in the present case. The trial court found that Caldwell had received actual notice of the judgment within twenty days of its rendition by the trial court. Accordingly, Rule 306a(4)

does not operate to create a new date for starting the appellate timetable for Caldwell.

■ Using the date that the judgment was actually signed as the beginning date, Caldwell's motion for new trial and subsequent filing of an appeal were both untimely. However, because the timetable was restarted for appellant Burnett, Burnett's motion for new trial was timely, as was his bond. Rule 41(a) requires that Burnett's timely motion for new trial inure to the benefit of Caldwell, thus Caldwell had ninety days from the date of judgment, September 13, 1993, to file his appeal bond. However, even if we treat the timetable as extended, use the date the final judgment was actually signed, and allow Caldwell the ninety days provided by Rule 41 in which to file his bond, Caldwell's bond was not timely filed. It was actually filed 120 days after the judgment applicable to Caldwell was signed. Although we are aware of no case in which a different date of judgment has been applied to different appellants, that appears to be the proper result.

Caldwell's appeal is dismissed for want of jurisdiction because his bond was untimely filed. This does not affect Burnett's appeal, which we now address on the merits.

## NECESSARY PARTIES

■ Burnett first contends that the trial court could not grant any judgment in this case because necessary parties were not made part of the case. He points out that only two of the lot owners, James Caldwell and Warren Burnett, filed the initial suit against the Association and complains that when the Association counterclaimed with its own motion for declaratory judgment, it should have been required to join all other lot owners. He states that there are 900 lot owners in the subdivision and contends that each owner is a necessary party to this case. He argues that the trial court should not have granted a judgment because it had no jurisdiction to do so in the absence of those other necessary parties. His argument is based upon the concept of due process and his presumption that this decision will cause the issue to be res judicata as to all the remaining lot owners.

This assumption is incorrect. Section 37.006(a) of the Civil Practice and Remedies Code specifically provides that a declaration does not prejudice the rights of any person not a party to the proceeding. Tex.Civ.Prac. & Rem.Code Ann. § 37.006(a) (Vernon 1986); see *Malloy v. Newman*, 649 S.W.2d 155, 157 (Tex.App.–Austin 1983, no writ). The rule further requires all persons who have a claim in interest which would be affected by the declaratory relief to be made parties to the suit.

The question of joinder under Tex.R.Civ.P. 39 as applied to the declaratory judgment act has been interpreted as providing discretionary authority to the trial court to refuse to render a declaratory judgment when the decree would not terminate the uncertainty or controversy giving rise to the proceeding. Tex.Civ.Prac. & Rem.Code Ann. § 37.008 (Vernon 1986); Tex.R.Civ.P. 39(b).

■ The rules of mandatory joinder provide that a person shall be joined as a party in the action (1) if in his absence complete relief cannot be accorded among those already parties, or (2) if he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest or leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

In this case, the first reason for joinder does not apply because complete relief can be accorded to the parties presently in the lawsuit without the joinder of any additional parties. The second factor does not apply because under the declaratory judgment act, the rights of those not joined would not be adjudicated.

The Supreme Court has specifically stated that it would be rare indeed if there were a person whose presence was so indispensable that his absence deprived the court of jurisdiction to adjudicate between the parties already joined. *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex.1982). This is not such a case. This point of error is overruled.

## SUMMARY JUDGMENT

Burnett next contends that the trial court erred in rendering a declaratory summary judgment in favor of the Association on its counterclaims because the Association did not prove its entitlement to that judgment as a matter of law. In reviewing this contention, we must first determine what summary judgment evidence was before the trial court. In this context, Burnett contends that the trial court also erred by striking his response to the Association's motion for summary judgment.

The September 13, 1993 order striking the response states that the ruling is based on a motion not in the record and on discussion by counsel at a March 2, 1993 hearing. The Association argued that Burnett's response should be struck because it raised only the same defensive issues, i.e. the creation of two classes of lot owners and the failure to provide a three-quarters vote, that had been disposed of in the order dismissing Caldwell and Burnett's claims against the Association. However, the issues of collateral estoppel and res judicata raised at the hearing are not a part of the present argument.[1] The contention of error, as constructed by appellants, complains that the court erred by striking their response because it addressed the joinder issues previously discussed. We have reviewed the response. It does not refer to joinder. No error has been shown.

■ We next move to a review of the summary judgment. The relevant standard of review places the burden upon the movant to show that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. In deciding whether there was a disputed issue of material fact, evidence favorable to the nonmovant is taken as true and every inference must be indulged in favor of the nonmovant and all doubts are to be resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). If a written instrument is worded such that it can be given a definite legal interpretation, it is not ambiguous, and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

The merits of this case rest upon the single issue raised by the Association in its motion for summary judgment and in its petition for declaratory judgment. The question posed is the manner in which a vote to amend the maintenance charge shall be conducted.

■ The deeds refer to the maintenance fund agreement. The agreement states how funds shall be obtained and expended, sets the annual maintenance charge at the rate of $10 per year, and goes on to state that "[s]uch annual charge or dues may be adjusted from year to year by said Association as the need to the property may, in its judgment, require but in no event shall such charge be raised unless approved by a majority vote of the lot owners."

Another document, entitled "Restrictions for Callender Lake Section 5," executed on October 28, 1968, contains a series of covenants and restrictions concerning the care, upkeep, and appearance of the lots and housing on the property. Paragraph 23 states that each lot is subject to an annual maintenance fee of $10, specifies payment procedures, and sets out the purpose of the "Maintenance Fund." It then provides that

Each lot in CALLENDER LAKE, SECTION 5, sold by the undersigned, its successors or assigns, shall be subject to an annual maintenance charge to be payable at the rate of TEN AND NO/100 DOLLARS ($10.00) per year, for the purpose of creating a fund to be known as "Maintenance Fund" to be made by CALLENDER LAKE PROPERTY OWNERS IMPROVEMENT ASSOCIATION, and to be paid by the owners of the lot, the same to secure by a Vendor's Lien upon said lot, and payable on the first day of January, of each year beginning January 1, 1968, to CALLENDER LAKE DEVELOPMENT PROPERTY OWNERS IMPROVEMENT ASSOCIATION, at its office.... The

---

1. There is authority that claims asserted in a suit which was dismissed with prejudice could not later be raised as a defense in a subsequent suit. *Mossler v. Shields,* 818 S.W.2d 752 (Tex.1991); *Logan v. First Bank of Houston, Texas,* 736 S.W.2d 927 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). These claims were raised in this suit, not another suit.

maintenance charge for a lot purchased during a year shall be prorated.

Funds arising from said charge shall be applied toward the payment of expenses incurred in the maintenance and operations of Community Improvements, Civic betterments, and any other thing necessary or desirable in the opinion of the Association to keep the property maintained.

Such maintenance charge shall extend for a period of twenty-five (25) years from January 1, 1968, and shall be extended automatically for successive periods of ten (10) years unless the then owners of a majority of the lots in the entire addition vote to discontinue such charge, such action to be evidenced by written instrument signed and acknowledged by the owners of a majority of the lots and recorded in the Deed Records of Van Zandt County, Texas. . . .

Paragraph 24 provides:

These restrictions and covenants are hereby declared to be covenants running with the land ... and shall be binding for a period of twenty-five (25) years from the date hereof; and at the end of such period, said restrictions and covenants shall automatically be extended for a successive period of ten (10) years unless, by a vote of a three-fourths (¾ths) majority of the then owners of the lots in such Subdivision (each lot having one (1) vote), taken prior to the expiration of said 25 year period and filed for record in said County, it is agreed to amend or release same.

Although this document mentions the amount of the initial maintenance fund charge and the amount of the fee as it had been set by that agreement, the focus of its language is upon the time frame during which the fund is to exist. Thus, the language of this document does not control over the more specific language of the maintenance fund agreement and the method specified therein for changing the amount of the fee.

The Association argues that the language of the maintenance fund agreement stating that "in no event shall such charge be raised unless approved by a majority vote of the lot owners" clearly requires only a majority vote of the lot owners voting in order to increase the maintenance fees. Although the bylaws, which were not part of the judgment or findings in this case, require only a one-half majority vote of the lot owners responding, that language does not appear in the two documents that were construed by the trial court: the maintenance fund agreement and the restriction agreement.[2]

 It is clear that the Association knew how to draft language that would require only a majority of those voting, because it drafted and included such language in its bylaws. That language does not appear in either the maintenance fund agreement or the deed restrictions.

The language used in the contracts is not ambiguous. Nevertheless, the trial court erred in its analysis of the documents at issue. In the absence of limiting language, the term *lot owners* cannot be construed to be a smaller quantum than all of the lot owners.

The next series of issues involve the question of ratification of the previous acts of the Association. The uncontroverted summary judgment proof is that Caldwell and Burnett both paid the increased fees provided by previous elections. The first of these elections increasing the fees took place in 1986.

**2.** The bylaws of the Association provide in Section 6 that "[s]uch annual charge or dues may be adjusted from year to year by said Association as the need to the property may, in its judgment, require but in no event shall such charge be raised unless approved by a majority vote of the *lot owners responding."* The bylaws do not show the date upon which they were adopted, nor do they show the authority by which they were created. It is also not referenced in the deed through which Caldwell or his co-appellant purchased their respective properties.

The Association states in its brief that "[t]he By–Laws themselves are not material to the Summary Judgment. The Summary Judgment does not show where the By–Laws were construed or relied upon by the Trial Court." This statement appears to be correct. Therefore, despite the language in the bylaws which would support a finding that a majority of those voting would serve to validate the increase, it cannot be considered in our review of the trial court's interpretation of the two remaining documents.

At that time, the maintenance fee was raised from a voluntary fee of $50 to $100 per year for a lot with a house, and a voluntary fee of $30 to $40 per year for a lot with no residence. In 1991, the Association held another election seeking to raise the fees to $200 annually for lots with houses. This election passed the increase by a vote of 284 to 145. The uncontroverted evidence shows that Caldwell and Burnett paid the increased fees until the 1992 election, at which point they reverted to the original $10 payment. This could be reviewed under either the doctrine of ratification or its near relation, waiver. Indeed, courts have held that, in effect, waiver and ratification are opposite sides of the same coin.

> These two terms have been used interchangeably many times.... ratification and waiver invoke the same factual elements: (1) There must be full knowledge of the known right which vitiates a prior act, and (2) there must be an intentional relinquishment of the known right, or intentional recognition of the prior act, depending upon the user's choice of words. While to relinquish is the gist of "waiver" and to approve is the gist of "ratification," to relinquish a known right is to give validity to the prior act and to approve a prior act is to relinquish a known right.

*Jordan v. City of Beaumont,* 337 S.W.2d 115, 118 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.).

■ Normally, waiver is considered a question of fact. However, the question becomes one of law if the facts and circumstances are admitted or are clearly established. *Shaw Equipment Co. v. Hoople Jordan Construction Co.,* 428 S.W.2d 835 (Tex. Civ.App.—Dallas 1968, no writ). In the present case, there are no issues of disputed fact. Because the response was struck, the only evidence properly before the court in this case is the Association's attachments to its motion for summary judgment and the referenced documents. Even if Burnett waived any right to complain of the earlier election or ratified its existence by complying with its requirements, this waiver or ratification should not extend beyond the *results* of the first election. Thus, the question of rati-

fication or waiver supports only ratification of the payments imposed by the 1986 election but not of fees imposed by the 1991 election.

■ An additional issue raised by Burnett concerns the creation of two different levels of maintenance fees. This question is not addressed by either of the documents interpreted by the court. The documents do not provide that their terms are exclusive. However, the dual fee structure went into effect sometime before 1980 without complaint. Thus, Burnett ratified the division by paying the fees without complaint.

■ Burnett also argues that the trial court erred because the correct interpretation of the contract would have required a three-quarters majority vote in order to raise the fees. The section involving this issue does not apply to changes in the fee structure, but to changes in the restrictive covenants contained within the document. The trial court correctly held that the three-quarters vote restriction did not apply in this context.

■ Burnett next contends that the trial court abused its discretion in awarding attorney's fees to the Association in the amount of $5,000. Tex.Civ.Prac. & Rem.Code § 37.009 (Vernon 1986) provides that, in any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just. The award of attorney's fees is discretionary with the trial court, and its judgment will not be reversed without a showing of abuse of discretion. *Reintsma v. Greater Austin Apartment Maintenance,* 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd). In light of the errors found in the court's disposition of this case, the imposition of costs and attorney's fees are now not equitable and just.

The appeal by Caldwell is dismissed for want of jurisdiction. The judgment against Burnett is reversed and remanded to the trial court.