**Don WILLIAMS and Ray Miller, Appellants,**

**v.**

**The CITY OF MIDLAND, Appellee.**

No. 08–95–00157–CV.

Court of Appeals of Texas, El Paso.

Aug. 22, 1996.

Opinion Overruling Rehearing Oct. 10, 1996.

Robin Collins, Rodriguez, Lewis & Collins, El Paso, for appellants.

Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellee.

Before McCLURE, CHEW and WOODARD (Retired, Sitting by Assignment), JJ.

## OPINION

CHEW, Justice.

The Appellants are two police officers who sued the Appellee, the City of Midland for breach of contract and negligent misrepresentation. A jury ruled that the City had negligently misrepresented the salary that the Appellants would receive upon becoming police officers with the City of Midland and awarded damages of $17,500 to each officer. The City of Midland moved for Judgment Notwithstanding the Verdict ("JNOV") based upon sovereign immunity and the Appellants' failure to prove the elements of the negligent misrepresentation. Without stating its reasons, the trial court rendered a JNOV that the officers take nothing. The Appellants assert, in two points of error, that the trial court erred in entering a JNOV and raise a third point of error complaining that the jury findings on damages were against the great weight and preponderance of the evidence.

Both Miller and Williams were recruited by the Midland Police Department. They were mailed a brochure published by the Midland Police Department which set out the job qualifications, salary, benefits, and working conditions.

The brochure is the root of the dispute. The brochure, in pertinent part, read:

Salary: Police Recruit: $1743 per month. Upon completion of recruit school: promotion to police officer with a salary increase to $2578 per month.

There are step raises in each grade and rank and monthly longevity pay per year of service. Overtime pay is paid at the rate of time and one half. Compensatory time is available at the same rate.

. . . . .

6. **Certification and Appointment:** Before you can be hired as a police officer and begin the academy training, you must successfully complete steps 1 through five above. When you have passed all required selection steps, you are then hired in accordance with municipals requirements.

Both Appellants had oral interviews with ranking Midland police officers prior to being hired as police recruits, yet neither received information regarding salary other than that contained in the brochure. After their selection, each incurred moving costs, loans, and other expenses associated with their respective moves to Midland, Texas to attend a regional police academy which began in February, 1989. They then believed, based upon the brochure, that upon graduation from the police academy and law enforcement officer licensure, they would be promoted to police officer and earn a salary increase to $2,578 per month. About halfway through the academy, Recruits Williams and Miller learned that the salary figure of $2,578 per month was wrong.

Sgt. Ed Nicks of the Midland Police Department, visited with all of the Midland Police Department recruits at the academy to explain the discrepancy between the salary stated in the brochure and the salary the Midland Police Department was authorized to pay new police officers. Although Sgt. Nicks himself interpreted the language of the brochure to mean that the Appellants would receive $2,578 per month when they graduated from the police academy and acknowledged that the brochure "was sort of misleading," he advised all the recruits that "it would take 10 to 12 years to achieve [$2,578 per month]." Upon their graduation from the police academy and subsequent promotion to police officer, the rookie officers earned a monthly base pay of $1,743.

After their meeting with Sgt. Nick, Williams and Miller did not immediately institute suit or otherwise complain. Instead, they waited until their graduation and commissioning as police officers in May 1989, and then submitted a claim for the salary stated in the brochure of $2,578 per month. Their claim was processed up through the chain of command until it reached the Chief of Police, Richard Czech. He denied the claim and stated that had the department known, while the two were still recruits, that they would assert the salary claim following their graduation from the academy, the Midland Police Department "would not have continued to invest time to train you to become a police officer." This suit followed.

The process of producing the Midland Police Department's recruiting brochure tells much about the circumstances leading to the misleading salary statement. The idea of a recruiting brochure was initiated in 1988 and was intended to be mailed to people interested in becoming Midland police officers. The task was assigned to Sgt. Ed Nicks. A number of drafts were considered; a final draft was selected and 1,000 brochures printed. Some months later but before any brochures were distributed, Sgt. Nicks concluded that there was a "significant chance" the brochure salary statement might be misinterpreted. This was brought to the attention of Chief Czech. After being told that 1,000 brochures with the misleading statement had been printed, Chief Czech directed Sgt. Nicks to use up the flawed brochures and to fix the error when the next 1,000 brochures were printed. No effort was made to withdraw, retract, or correct the brochures until after Williams and Miller filed their claim. Then, the flawed brochures were withdrawn

and the new brochure was revised to state the correct wage offer.

The primary issues presented are whether: (1) the doctrine of sovereign immunity bars Appellants' negligent misrepresentation cause of action as a matter of law; and (2), if Appellants' cause of action is not barred, whether Appellants met their burden of proving all the elements of negligent misrepresentation. Finally, we address the sufficiency of evidence point of error on damages.

 The standard of review for the entry of a Judgment Notwithstanding the Verdict is essentially a "no evidence" standard, i.e., it is only proper if there is no evidence from which the jury could have made its findings. *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 699 (Tex. App.—El Paso 1993, no writ); *Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 56 (Tex.App.—Dallas 1991, no writ). The evidence must be reviewed in the light most favorable to the jury finding, considering only the evidence and inferences that support the jury finding. *Leon, Ltd*, 862 S.W.2d at 699. If there is more than a scintilla of competent evidence to support the jury's finding, the judgment notwithstanding the verdict should be reversed. *Id.* Furthermore, "[a] defense which would bar suit, if established by the evidence as a matter of law, will properly support a JNOV." *Id.; Stout v. Clayton*, 674 S.W.2d 821, 826 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.).

 Governmental immunity embraces two basic principles of law. First, the state as sovereign is immune from suit without consent regardless of it's liability. Second, the state is immune from liability even though it has consented to be sued. *Couch v. Ector County*, 860 S.W.2d 659, 661 (Tex. App.—El Paso 1993, no writ), *citing Dillard v. Austin Independent School District*, 806 S.W.2d 589 (Tex.App.—Austin 1991, writ denied).

There are, however, exceptions. For example, there is no immunity from liability when entering into a contract. *Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998 (1898); *Dillard*, 806 S.W.2d at 592. Municipalities provide another exception to the general rule.

This is because of the "governmental—proprietary" dichotomy established by the Supreme Court and applicable only to municipal governments. *City of Galveston v. Posnainsky*, 62 Tex. 118, 125 (1884). A Texas municipal government is only immune for its governmental functions; it has no immunity for any proprietary functions. Simply stated, a municipality, unlike the State and other governmental units, does not necessarily have governmental immunity. *Dillard*, 806 S.W.2d at 593. This distinction is fundamental to Texas governmental-immunity jurisprudence. *Id.*

A third exception is provided under the Texas Tort Claim Act whereby the State and its subdivisions waive immunity from suit and from liability for certain acts, omissions, and conditions specified in the Act. Texas Civil Practice and Remedies Code, Title 5, Governmental Liability. This exception, coupled with the "governmental-proprietary" exception for municipalities, has meant that the Act was only applicable to the governmental functions of a municipal government. As a consequence, in cases involving municipal governmental immunity, the primary focus of the courts has long been on making a distinction between governmental and proprietary functions. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 730 (Tex.App.—Corpus Christi 1994, writ denied). The criteria for distinguishing whether a city's action is governmental or proprietary has generally been (1) whether it was mandated by state law or assumed as a matter of discretion by the city, (2) whether it was for the benefit of local constituents or the public at large, or both (1) and (2). The case by case distinctions by the courts yielded often inconsistent and incoherent results; though the results were, perhaps, reflective of the constantly shifting equilibrium in our political and legal system between the benefit of governmental immunity versus the protection of the individual. See generally, *Bellnoa v. City of Austin*, 894 S.W.2d 821, 826 (Tex.App.—Austin 1995, no writ).

A part of the so called tort reform movement in 1987, involved the amendment of the Texas Constitution to allow the Legislature to classify the functions of a municipality that

are to be considered governmental and those that are proprietary. TEX. CONST.ANN. art. XI, § 13. The Texas Tort Claims Act amendments consequently dealt principally with municipal governmental immunity. The Legislature repealed Section 101.058 which provided that the Act did "not apply to a proprietary function of a municipality" and added Section 101.0215. Acts 1987, 70th Leg., 1st C.S., Ch. 2, § 3.02, 1987 TEX.GEN. LAWS 47–8. This section enumerated thirty-three municipal functions defined as governmental and included not only long held governmental functions such as police and fire protection, and sanitary and storm sewers, but such traditional proprietary functions as the operations of cemeteries, waterworks, and street construction and design. *See City of Odessa v. Bell,* 787 S.W.2d 525, 527 (Tex.App.—El Paso 1990, no writ); *Dalon v. City of DeSoto,* 852 S.W.2d 530, 536 (Tex.App.—Dallas 1992, writ denied). The Legislature then waived municipal governmental immunity for those acts, omissions, and conditions specified in the Act[1] and which arose from the newly defined and more all encompassing list of municipal governmental functions. TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215 (Vernon Supp.1996); John T. Montford & Will G. Barber, 1987 TEXAS TORT REFORM: THE QUEST FOR A FAIRER AND MORE PREDICTABLE TEXAS CIVIL JUSTICE SYSTEM, 25 HOUS. L.REV. 59, 121 (1988).

Though it would seem that the Legislature intended to eschew the governmental-proprietary dichotomy, the statute retains, in subsections (b) and (c), the proprietary function distinction. As a consequence, the courts of appeal have, for the most part, continued to place emphasis and priority on the governmental-proprietary distinction. *Dillard,* 806 S.W.2d at 594 (exception to the general rule of governmental immunity is that a municipality is not immune for proprietary functions); *McKinney v. City of Gainesville,* 814 S.W.2d 862, 865 (Tex.App.—Fort Worth 1991, no writ)("the initial determination to be made is whether the municipality's action or omission involves its pro-

prietary function or governmental.... [B]ecause section 101.0215(b) states that the TTCA 'does not apply to the liability of a municipality for damages arising from it proprietary functions,....' "); *City of Houston v. Southwest Concrete Const., Inc.,* 835 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1992, writ denied)(so long as the function is not enumerated as governmental in Act, court determines whether activities constitute proprietary); *Herschbach,* 883 S.W.2d at 730 (court must first determine proprietary or governmental function since TTCA does not apply to proprietary); *City of Waco v. Hester,* 805 S.W.2d 807, 812 (Tex.App.—Waco 1990, writ denied) ("police-protection exemption only applies to claims arising out of the negligent formulation of governmental policy, not out of the negligent implementation of formulated policy."). The exception may be the Dallas court which seemed to take a more bright line approach in *Dalon,* 852 S.W.2d at 536–37. *See also, Bell,* 787 S.W.2d at 527; *cf. Couch,* 860 S.W.2d at 661.

Broadly stated, "police protection" the traditional and statutorily defined governmental function could certainly encompass the activity at issue in this case. Indeed, the City of Midland argues that even though publishing a recruiting brochure is not unique to the operations of a police department, it is necessarily a governmental function because it flows from the activity of hiring and firing uniformed police officers. *Citing Martinez v. Hardy,* 864 S.W.2d 767 (Tex.App.—Houston [14th Dist.] 1993, no writ) and *City of Dallas v. Moreau,* 718 S.W.2d 776 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e). We also note that the three municipal functions listed as "proprietary" by the Act clearly have no applicability to the actions at issue in this case.

Nonetheless, traditional distinctions may still be easily made to distinguish the activity here as one done in the exercise of the municipality's proprietary, rather than governmental function. Moreover, the implicit argument that all acts arising under the "po-

---

**1.** The Tort Claims Act waives governmental immunity in three areas: (1) claims arising out of the use of motor-driven vehicles and motor-driven equipment; (2) claims arising from some con-

dition or use of tangible personal property; and (3) claims arising from some condition or use of real property. TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.021 and 101.022 (Vernon 1986).

lice protection" are entitled to absolute immunity has been consistently rejected by the courts. *See State v. Terrell,* 588 S.W.2d 784, 787–88 (Tex.1979); *see also, City of Dallas v. Cox,* 793 S.W.2d 701, 727 (Tex.App.—Dallas 1990, no writ), and *Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

■ The recruitment of uniformed police officers is a competitive activity between municipalities such that the hiring of these officers to enter recruit training to become a Midland police officer is of primary benefit to the citizens of Midland rather than the public at large. These officers were recruited to train at a regional academy which provides police officer training for other municipalities and agencies, and not exclusively for the City of Midland. We also think that a distinction can also be drawn from the fact that the cause of action in this case stems from the duty and obligation which the Midland Police Department had to individuals recruited to be trained and to serve as Midland police officers; this duty and obligation does not implicate the general provision of police protection, i.e., police protection in traffic patrol, security, and criminal investigations. These are not specious distinctions; we believe that "[t]he obligation to do justice rests upon all persons, natural and artificial" is fundamental and, upon the facts of this case, we are not persuaded that the interests of municipalities are in any way prejudiced or endangered by this holding.[2] We therefore conclude that the Appellants' cause of action against the City of Midland is not barred by governmental immunity as a matter of law and, consequently, sustain their first point of error.

However, even though the City of Midland was not entitled to the JNOV on the basis of sovereign immunity, our analysis must now turn to whether Appellants adequately proved the elements of their negligent misrepresentation cause of action.

■ To establish a cause of action for negligent misrepresentation, Appellants had to prove the following elements:

(1) the representation was made by a defendant in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest;

(2) the defendant supplied "false information" for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffered pecuniary loss by their justifiably relying on the representation.

*Federal Land Bank Association of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied); see RESTATEMENT (SECOND) OF TORTS § 552 (1977).

■ The City of Midland's principal argument was that in order to establish a negligent misrepresentation cause of action, one must prove the false misrepresentation of an existing fact. In support of this allegation, Midland relies on Airborne Freight Corp., Inc., wherein this Court held that the "false information" element of negligent misrepresentation is a misstatement of an *existing fact. Id.* at 294. To explain the "existing fact" element, this Court provided several examples, for instance: in *Traylor v. Gray,* 547 S.W.2d 644, 648 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), a cotton ginner represented he had negotiated a contract for the sale of a farmer's cotton crop, when in fact he had not, resulting in a substantial loss to the farmer when the cotton market dropped. *Airborne Freight Corp., Inc.,* 847 S.W.2d at 294.

In this case, the Midland Police Department avers that the misrepresentation of the pay scale on the brochure is not the misrepresentation of an existing fact but rather the breach of a future promise. On the other hand, the Appellant officers contend that the existing fact requirement is established by the difference between the city's true pay scale for police officers at the time they received the brochure, $1,743 per month, and

---

**2.** *Marsh v. Fulton County,* 10 Wall. 676, 19 L.Ed. 1040 (1870).

the pay scale articulated in the brochure, $2,578 per month. We agree with the latter.

On the day in which the brochure was published, the existing pay scale for rookie police officers was $1,743 per month. On that same day, the brochure falsely misrepresented the pay scale as $2,578 per month. At trial, evidence was introduced and testimony was had on the actual pay scale for police officers at the time of the publication of the brochure. In fact, Sgt. Nicks testified that the he had to make modifications to the brochure to accurately reflect a recent change in the pay scale for rookie police officers. Thus, viewing the evidence in a light most favorable to the verdict, we conclude that there was more than a scintilla of evidence on which the jury could find that the misrepresentation was of an existing fact.

■■■ We must ultimately conclude, however, that the City of Midland pled and established a defense as a matter of law which properly supports the JNOV. Though only inferentially argued by the City of Midland, the city did plead the affirmative defense of waiver. This is a term akin to and used interchangeably with ratification. *Caldwell v. Callender Lake Property Owners Improvement Ass'n*, 888 S.W.2d 903, 910 (Tex. App.—Texarkana 1994, writ denied), *citing Jordan v. City of Beaumont*, 337 S.W.2d 115, 118 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.). The two invoke the same factual elements which are: (1) the full knowledge of a fraudulent act; and (2) the intentional waiver or ratification of the act. *Id.* In other words, when a person, induced by a fraud to enter into an agreement, continues to accept benefits under that agreement after becoming fully aware of the fraud ratifies the agreement. *Sears, Roebuck & Co. v. Meadows*, 878 S.W.2d 171, 178 (Tex.App.—Waco 1993), *rev'd on other grounds*, 877 S.W.2d 281 (Tex.1994). This is an issue that is normally a question of fact, but it may become one of law if the facts and circumstances are admitted or clearly established. *Caldwell*, 888 S.W.2d at 910, *citing Shaw Equipment Co. v. Hoople Jordan Construction Co.*, 428 S.W.2d 835 (Tex.Civ.App.—Dallas 1968, no writ). In this case there are no disputed facts.

■■ Approximately halfway through their training program, Officers Williams and Miller, along with the other Midland recruits were advised of the misrepresentation. They were not compelled against their will to continue with the paid training program and prospective, *if conditional offer of employment* as a uniformed police officer. They could have refused the arrangement and instituted their suit. Instead, they continued their paid training and they were, as promised, hired as Midland police officers upon their graduation from the police academy and completion of their law enforcement licensure. Having accepted the benefits under the agreement after gaining full knowledge of the misrepresentation, their conduct is inconsistent with avoiding the effects of an agreement. The officers obviously sought to reserve the right to recover the differential between the misrepresented salary and their actual salary. The problem with that strategy is that in a cause of action for negligent misrepresentation, the plaintiff can generally only recover the amount necessary to compensate he or she for direct pecuniary loss. *Sloane*, 825 S.W.2d at 442. The plaintiff cannot recover benefit of the bargain damages, lost profits, or damages for mental anguish. *Id.; Airborne Freight Corp., Inc.*, 847 S.W.2d at 295–96.

Consequently, we find the evidence to be undisputed and clearly establishes the City of Midland's defense of waiver or ratification as a matter of law properly supports the JNOV. Point of Error Two is overruled.

Having overruled the preceding point of error, it is unnecessary to consider Appellants' Point of Error Three.

The judgment of the trial court is affirm.

### *OPINION ON MOTION FOR REHEARING*

■■ In this appeal, we affirmed the trial court's granting of judgment notwithstanding the verdict in favor of Appellee. The Appellants assert, *inter alia*, that affirming the trial court's judgment, on the basis that the Appellee had established an affirmative defense as a matter of law, was error because

the Appellee waived that defense by failing to submit it to the jury. We disagree.

The Appellants submitted two theories of recovery to the jury: breach of contract and negligent misrepresentation. The City's affirmative defense of waiver was submitted to the jury as a conditional issue to the question of breach of contract but not to the question of negligent misrepresentation. The jury found that the City did not breach the contract but it was guilty of negligent misrepresentation. As a result, there is no jury finding as to Appellants' affirmative defense of waiver or ratification.

The Appellants argue that the Appellee, by failing to submit the waiver or ratification defense to the jury with the predicate issue of negligent misrepresentation, waived that defense. *Oil Country Specialists, Ltd. v. Philipp Bros., Inc.*, 762 S.W.2d 170, 176 (Tex. App.–Houston [1st Dist.] 1988, writ denied). This argument would be persuasive but for the fact that we are reviewing a judgment n.o.v.

A motion for judgment n.o.v. is based upon the same grounds that have been or could have been urged in a motion for directed verdict and is sustainable on appeal only if a directed verdict would have been proper. Tex.R.Civ.P. 301; *Dodd v. Texas Farm Prods. Co.*, 576 S.W.2d 812, 815 (Tex.1979); *Monk v. Dallas Brake & Clutch Serv. Co., Inc.*, 697 S.W.2d 780, 783 (Tex.App.–Dallas 1985, writ ref'd n.r.e.). If the evidence is legally insufficient to support the jury verdict, a judgment n.o.v. is proper to set aside the verdict. The trial court must determine that the evidence conclusively demonstrates that no other verdict could be reached. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985).

The Appellee's motion for judgment n.o.v. is not in the record and the trial court did not specify its reasons for granting judgment n.o.v. However, we presume, and Appellants have not argued otherwise, that the Appellee's motion was based upon a legal sufficiency or as a matter of law, challenge to the jury's verdict.

Legal sufficiency, no evidence, or as a matter of law complaints are preserved at **each**

of the following stages: (1) objection to the submission or failure to submit a pertinent jury charge; (2) motion for directed verdict; (3) motion to disregard the answers to a jury question; or (4) motion for judgment n.o.v. *Cecil v. Smith*, 804 S.W.2d 509, 512–13 n.1 (Tex.1991) (dissent); *Aero Energy, Inc. v. Circle C Drilling*, 699 S.W.2d 821, 822 (Tex. 1985).

Accordingly, we find that the Appellee did not waive its affirmative defense and, without further discussion of Appellants' other points, overrule their motion.