**FIRST CITY MORTGAGE COMPANY, Appellant,**

v.

**Thomas S. GILLIS, Jr. and Frances Gillis, Appellees.**

No. A14–84–816CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 16, 1985.

Rehearing Denied June 13, 1985.

Bruce K. Collmar, Cathleen Parsley, Williford & Ragir, Dallas, for appellant.

Bernard W. Fischman, Lackshin & Nathan, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellees sued First City, appellant, and Investment Corporation of America for violations of the Texas Deceptive Trade Practices Act. TEX.BUS. & COM.CODE ANN. § 17.46 (Vernon Supp.1985). Investment Corporation of America (ICA) later filed bankruptcy and was severed from appellees' suit against First City.

The trial court tried the case on the depositions and exhibits submitted by the parties. The trial court adopted the findings of fact and conclusions of law submitted by appellees and awarded appellees treble damages, prejudgment interest and attorney's fees for a total judgment of $163,676.96. We find no evidence to support the trial court's finding of violations by First City of the Deceptive Trade Practices Act. We therefore reverse and render.

In mid-1976 appellees began construction of a manufacturing plant for Best Industries, Inc. Construction was financed through Best Industries' general line of credit with Union Bank. Mr. Gillis employed F. Lee Pinkston as a broker to obtain permanent financing for the plant. On March 24, 1977, Mr. Gillis made a loan application to ICA through Mr. Pinkston who at that time was employed by First City. Mr. Gillis paid an advance commitment fee of $11,000 to ICA. On May 18, 1977, ICA sent its commitment to make the loan to First City. On May 27, 1977, Pinkston delivered the commitment to Charles' W. Le Master, treasurer of Best Industries, for review and signature. Mr. Gillis was out of the country at that time and had authorized Mr. Le Master to sign appellees'

names to the commitment during his absence. Le Master was authorized to pay an $11,000 standby deposit upon receipt of the commitment. Pinkston told Le Master that the commitment required the payment of $22,000 to ICA. Le Master called Mr. Gillis and obtained authorization to pay the unexpected fee. Le Master and Jo Ann Juergens signed the names of Mr. and Mrs. Gillis on the commitment and issued a $22,000 check to ICA and an $11,000 check to First City as its brokerage commission. It is from this transaction that appellees allege that First City's violations of the Deceptive Trade Practices Act arose. Appellees never received the loan from ICA and claim as their actual damages the $11,000 paid to First City and the $33,000 paid to ICA.

■ The Act declares unlawful any false, misleading, or deceptive acts in the conduct of any trade or commerce. A consumer may maintain an action when such an act is a producing cause of actual damages to him. TEX.BUS. & COM.CODE § 17.46, § 17.50 (Vernon Supp.1985). First City contends in its first point of error that there is no evidence to support the trial court's finding that First City committed false, misleading, or deceptive acts that were the producing cause of appellees' damages. In considering this no evidence point, we must consider only the evidence tending to support the finding viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be drawn therefrom, and disregarding all conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). A careful review of the record shows that there is no evidence to support the trial court's finding. We proceed to discuss each of the specific acts of First City which the trial court found to be deceptive.

■ The first deceptive act found by the trial court was that Mr. Pinkston, the agent of First City, misrepresented to Mr. Gillis the amount of the commitment fee required by ICA. This misrepresentation was rectified by Mr. Pinkston prior to Mr. Gillis's acceptance of the commitment and payment of the commitment fees. Mr. Gillis, upon being informed of the additional fee, had the option to refuse the commitment and receive a refund of at least $10,500 of the $11,000 advance commitment fee. This representation was not a producing cause of appellees' damages.

The second deceptive act found by the trial court was Pinkston's failure to inform Le Master of differences between terms requested in the application and the terms of the commitment. The application signed by Mr. Gillis was a preprinted form received from ICA. In the application, Mr. Gillis made a typewritten request to vary the loan amortization and the prepayment provisions of the application. The commitment did not contain the requested changes. The trial court held that Pinkston had the duty to inform Le Master that the commitment did not conform to the application in every respect, and that Pinkston's failure to do so was an unconscionable deceptive act.

■ We recognize that a broker is a fiduciary required to exercise fidelity and good faith towards his principal, and that this requirement not only forbids conduct on the part of the broker which is fraudulent or adverse to his principal's interest, but also imposes the duty of communicating all information he may possess which is material to his principal. *Janes v. CPR Corporation*, 623 S.W.2d 733, 740 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Also, the failure to disclose material information concerning services which was known at the time of the transaction is a deceptive act under § 17.46 of the Deceptive Trade Practices Act. See *Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex.1982). However, the contents of a written contract is not the kind of information that a broker is required to disclose. The amortization and pre-payment penalty provisions of the commitment were clear and unambiguous. Mr. Gillis's ignorance of ICA's refusal of the changes he requested in the application

was due to Le Master's failure to adequately review the commitment before signing.

■ It is well settled that the parties to a contract have an obligation to protect themselves by reading what they sign. Unless there is some basis for finding fraud, the parties may not excuse themselves from the consequences of failing to meet that obligation. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982). If no fraud is involved, one who signs an agreement without knowledge of its contents is presumed to have consented to its terms and is charged with knowledge of the agreement's legal effect. *Hampshire v. Hampshire*, 485 S.W.2d 314, 316 (Tex. Civ.App.—Fort Worth 1972, no writ). The broker does not have a duty to disclose the contents of a written agreement that the principal is obligated to read before he or his authorized agent signs it. *See Pfeffer v. General Casualty Company of America*, 73 S.W.2d 234, 236 (Ga.App.1952); and *Swift v. White*, 256 Iowa 1013, 129 N.W.2d 748, 752 (1964). The trial court erroneously held that Pinkston had the duty to orally disclose to Le Master that the commitment did not conform to the requests made in the application, when the commitment itself disclosed these matters.

The trial court found that the commitment provided that the closing date of the transaction was to have been September 1, 1978, or earlier at ICA's sole option. Mr. Gillis wanted the closing date to be on or before December 1, 1977, because construction of the plant would be completed at that time. The final deceptive act found by the trial court was that Pinkston misrepresented that ICA would close the loan on or before December 1, 1977. There is no evidence that Pinkston misrepresented to Gillis that the loan could be closed before September 1978. Mr. Gillis testified that he had no recollection that Pinkston represented that Mr. Gillis had an absolute right to close before September, 1978. Gillis testified Pinkston implied that he could get the loan closed earlier if he was ready.

Mr. Gillis qualified this statement by describing it as a hazy recollection. Mr. Gillis testified that he believed he had the right to close earlier, but he never stated that Pinkston so represented.

■ Even if we infer Mr. Gillis's testimony to import that Pinkston misled Mr. Gillis to believe that he had the right to have the loan closed earlier, Mr. Gillis could not have relied[1] on the alleged misrepresentation, because both the loan application, which was signed by Mr. Gillis, and the commitment clearly state that the loan was to be funded in September 1978. Mr. Gillis testified that he was sure that he read the provision in his loan application that, "The disbursement to purchase the loan is desired to occur September 1978 …." Mr. Gillis is not entitled to rely on representations by Pinkston concerning the rights provided for in the application and commitment when he was obligated to read them and has admitted that he read the application before he signed it.

Having found no evidence to support the trial court's findings, we reverse the trial court's judgment and render judgment that appellees, Thomas S. Gillis and Frances Gillis, take nothing by their suit against First City Mortgage Company.

First City raises other points of error challenging appellee's right to bring suit under the Deceptive Trade Practices Act. Our holding makes it unnecessary for us to address these points.

J. CURTISS BROWN, C.J., concurs in the judgment rendered.

---

1. Reliance by the plaintiff on the misrepresentation is an essential element of actionable fraud.

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).