**Linda S. ELLER, Appellant,**

v.

**NATIONSBANK OF TEXAS, N.A., Appellee.**

**No. 07–96–0366–CV.**

Court of Appeals of Texas, Amarillo.

Sept. 1, 1998.

---

Will G. Dickey & Associates, Will G. Dickey, Megan Gabel, Houston, for appellant.

Hirsch & Westheimer, P.C., Joseph S. Cohen, Eric Lipper, Houston, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Linda S. Eller (Eller) leased a safe-deposit box from NationsBank of Texas, N.A. (Na-

tions). After discovering that approximately $18,000 and four silver dollars were allegedly missing from it, she sued the bank for breach of contract, negligence, breach of its duty of good faith and fair dealing, implied warranty of habitability, and deceptive trade practice. Nations eventually moved for summary judgment, which the court awarded to it. From that judgment, Eller appealed, contending in her sole point that the court erred in granting the motion. We reverse in part and affirm in part.

## Background

To obtain the safe-deposit box, Eller executed a lease agreement with Nations on December 26, 1990. Among other things, the document described the relationship of the parties and contained the following provision:

2. The lessor has no possession or custody of, nor control over, the contents of the Box, and Lessee assumes all risks in connection with the depositing of such contents therein. The annual rental is solely for rental of the Box, and there shall be no liability on the part of the Lessor for loss of, or injury to, the contents of the Box from any cause whatsoever, including, but not limited to, fire, flood or other *force majeure,* deterioration of the contents of the Box, including loss of data on magnetic tape, disc or other media, and criminal acts or negligence of any person, corporation or other entity. An unauthorized opening shall not be presumed or inferred from proof of partial or total loss of contents. It is expressly understood and agreed that Lessor is not an insurer of the contents of Boxes. Insurance of contents is the sole responsibility of Lessee.

(emphasis in original).

At one time or another, Eller allegedly placed $18,200 and four silver dollars into the box. Those items were last seen by her in the box on March 18, 1993. However, on April 2, 1993, she discovered that they had been removed "by someone without [her]

knowledge or consent." This discovery instigated suit against Nations and the causes of action were numerous. First, Eller averred that the bank breached its contract to provide a safe and secure box. Then, she stated that because Nations had "sole control over the ... box rental, entry and exit procedures" and was "a large commercial bank whose ... rental agreement [was] non-negotiable," it owed her a duty of good faith. Furthermore, that duty was supposedly breached when the monies and coins were taken. Also asserted were causes of action sounding in 1) breached implied warranty of habitability, 2) negligence, and 3) deceptive trade practice. Finally, to avoid the effect of the release provision described above, she characterized it as unconscionable.

Nations eventually moved for summary judgment. It contended that it was entitled to same because 1) Eller had released all of her claims when she signed the lease agreement, 2) it had no duty to act in good faith and fairly deal with one renting a safe-deposit box, 3) Eller could not claim breach of any implied warranty of habitability since she did not live in the box, and 4) there is no evidence of any misrepresentation upon which a claim of deceptive trade practice could be founded. Summary judgment was eventually granted to Nations, and the court ordered that Eller "take nothing" against the bank. However, the particular grounds upon which the court relied went unspecified.[1]

## Standard of Review

■ For a summary judgment to be granted, the movant must negate the presence of all material issues of fact and establish his right to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Miller v. Galveston/Houston Diocese,* 911 S.W.2d 897, 898–99 (Tex.App.—Amarillo 1995, no writ). A defendant may do this by conclusively 1) negating one or more essential elements of his opponent's cause of action or 2) proving each element of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Furthermore, in determining whether the defendant carried this

---

1. We note that Eller's appellate brief says nothing of the chose-in-action concerning implied

warranty of habitability and conclude that she has waived it.

burden, we construe the evidence, and reasonable inferences therefrom, in a manner most favorable to the plaintiff. *Id.; Miller v. Galveston/Houston Diocese,* 911 S.W.2d at 899.

Next, the party requesting judgment is free to assert as many grounds therefor as he chooses. Should he raise several and the court fail to state upon which it relied in granting relief, an additional obstacle confronts the non-movant on appeal. It falls upon him to address each ground asserted and establish why it did not support the judgment. *Id.; Lee v. Levi Strauss & Co.,* 897 S.W.2d 501, 504 (Tex.App.—El Paso 1995, no writ).

■ Finally, summary judgment may be awarded only upon the grounds specified in the motion. Similarly, it is well settled that we cannot affirm summary judgment upon a ground omitted from the body of the motion. *Sysco Food Serv., Inc. v. Trapnell,* 890 S.W.2d 796, 805 (Tex.1994); *McConnell v. Southside Indep. School Dist.,* 858 S.W.2d 337, 339 (Tex.1993).

### *Application of Standard*

*1. Cannot Release Prospective Criminal Acts*

■ Eller initially contends that the release is "invalid to the extent it is an anticipatory release of the Bank's liability for its criminal acts." However, we need not consider it for it has been waived. Simply put, she never raised it below in her pleadings or response to summary judgment. Since that was a prerequisite to urging it here, it has been waived. TEX.R. CIV. P. 166a(c) (stating that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal"); *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 720 (Tex. App.—San Antonio 1994, writ denied).

*2. Violates the Expressed Negligence Doctrine*

Next, Eller contends that it was error to enter judgment upon her claims of negligence and gross negligence since the release failed to comport with the expressed negligence doctrine. That is, she believes that the release was not only inconspicuous but also that it failed to expressly release "the Bank for its own negligence." We disagree.

As to the matter of conspicuousness, we note that it was not raised below. Thus, Eller has waived the issue. TEX.R. CIV. P. 166a(c); *Newman v. Tropical Visions, Inc., supra.*

■ As to the remaining allegation, we acknowledge that before one can be released, prospectively, for injuries arising from one's own negligence, the release must express, in specific terms within the four corners of the instrument, an intent to release one from the results of his own negligence before he is so released. *Fisk Elec. Co. v. Constructors & Assocs., Inc.,* 888 S.W.2d 813, 814 (Tex.1994); *Enserch Corp. v. Parker,* 794 S.W.2d 2, 8 (Tex.1990). That was done here given the Supreme Court's decision in *Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50 (Tex.1991).

■ In *Maxus,* the court held that language in a contract purporting to indemnify one against claims "without limit and without regard to the cause or causes thereof or the negligence of any party or parties" encompassed claims arising from one's own negligence. *Id.* at 56. Here, the release expressly encompassed liability "for loss of, or injury to, the contents of the Box *from any cause whatsoever,* including, but not limited to, fire, flood or other *force majeure,* deterioration of the contents of the Box, *including* loss of data on magnetic tape, disc or other media, and *criminal acts or negligence of any person, corporation or other entity.*" (emphasis added).

This provision is virtually indistinguishable from that in *Maxus.* Both instruments placed no restrictions upon the cause of the potential injury or loss and expressly mentioned "negligence." And, while the words "party or parties" were used in *Maxus,* we conclude, as a matter of contractual interpretation and law, that the phrase "any person, corporation or other entity" at least enjoyed like scope. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.,* 888 S.W.2d at 814 (recognizing that the "expressed negligence

requirement is ... a rule of contract interpretation" and amounts to a question of law). Indeed, reference to "any" person, corporation, or entity in the release before us has greater scope than the term "party or parties." This is so because the latter could be read to mean simply those who were party to the instrument while allusion to "any" person, corporation, or entity encompasses every legally cognizable entity or being, including parties to the agreement. So, logically, Nations would fall in either category. In sum, we not only hold as a matter of law that the words used at bar sufficiently evinced the specific intent to release Nations from its own negligence, if any, but also reject Eller's protestations to the contrary.

### 3. Bank Did Not Prove She Released Her Claims

Eller next posits that Nations failed to prove, as a matter of law, that she knowingly and voluntarily executed the release. That is, since no one explained the lease to her and nothing indicated that she understood its terms, a question of fact purportedly existed concerning her intent to release or waive potential claims. Thus, Nations was obligated to prove that she intended to release her potential claims. We again disagree.

■ It is undisputed that Eller signed the lease. Given that, (and absent evidence of fraud) we not only presume that she consented to its terms but also charge her with knowledge of those terms and their legal effect. *First City Mtg. Co. v. Gillis,* 694 S.W.2d 144, 147 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see Wyatt v. McGregor,* 855 S.W.2d 5, 13 (Tex.App.—Corpus Christi 1993, writ denied) (stating that absent fraud, one is presumed to know the contents of a document he signed); *Texas Export Dev. Corp. v. Schleder,* 519 S.W.2d 134, 139 (Tex.Civ.App.—Dallas 1974, no writ) (stating that a party to a written agreement is charged as a matter of law with knowledge of its provisions). Thus, by illustrating that Eller signed the contract containing the release provision, Nations satisfied its burden to prove that she released her claims against it.

Nations having met its summary judgment burden, the task then fell upon Eller to present evidence which would somehow vitiate the results of her conduct and the agreement which is presumed valid. And, until she presented evidence on the matter, Nations had to do nothing. Moreover, the statement in her affidavit that she "did not understand or intend to waive all of [her] rights under the law if a theft occurred" did not suffice to trigger Nations' burden. This is so for several reasons. First, the comment is a mere conclusion which carries no probative weight in the summary judgment setting. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (stating that affidavits consisting of only conclusions are insufficient to raise an issue of fact).

Second, nowhere does Eller claim that she was illiterate or otherwise incapable (physically or mentally) of reading the agreement or that she was induced to execute the agreement via fraud. Indeed, she admits that she did not even read the document before signing it. More importantly, we determined above that the instrument was not ambiguous or reasonably susceptible to an interpretation other than that which we assigned to it. Given these circumstances, Eller's unilateral and subjective belief that certain rights were not to be relinquished means nothing. Again, she had the obligation to read the unambiguous instrument before signing it. *First City Mtg. Co. v. Gillis,* 694 S.W.2d at 147. Having signed it, she is bound by its terms. *Id.*

■ Finally, we do not ignore Eller's contention that the release provision was unconscionable. As presented, the allegation is akin to an affirmative defense; it is being used as a means of negating the release. Thus, Eller had the burden to tender more than mere unsworn allegations to raise an issue of fact on the matter. *See Brownlee v. Brownlee,* 665 S.W.2d at 112 (stating that when a party opposing summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense). This, at the very least, entailed her presenting evidence depicting procedural or substantive abuse by Nations, such as overreaching, sharp-dealing,

deception, disparity in education, knowledge, bargaining position, or the absence of a viable alternative. *See El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61–63 (Tex.App.—Amarillo 1998, pet. pending) (discussing the elements of unconscionability). But, she did not. Other than alleging in her original petition and response to the motion for summary judgment that the release was unconscionable, the only evidence purportedly supporting her averment was her attestation that she was "required" by Nations to sign the agreement. We find, as a matter of law, nothing suggestive of unconscionability in a lessor requiring a lessee to sign a written agreement as a prerequisite to creating a lessor/leasee relationship.

*4. Failure to Disprove Claim of Negligence*

Next, Eller posits that Nations failed to disprove, as a matter of law, that it was negligent. We find the proposition moot. This is so because the bank established that Eller released it from injury or loss arising from its own negligence. Thus, whether the bank disproved the allegation that it was negligent matters not.

*5. Failure to Disprove Deceptive Trade Practice Claim*

**2.** Eller averred in her original petition that Nations:

represented and warranted, in connection with its lease of a safe deposit box ... that the ... box was in fact a 'safe' and secure place to put her valuables and that the articles ... would be free from the threat of theft, loss or disappearance. Plaintiff would show that Defendant Bank made such false, misleading and deceptive acts or practices in the conduct of its banking business in violation of the Texas Civil Practice and Remedies Code, [sic], § 17.34 et seq., including, but not limited to, the following:

1. representing that goods or services have sponsorship, approval, characteristics, ingredients, use, benefits or quantities which they do not have;
2. representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model if they are of another;
3. representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve;
4. representing that a guarantee or warranty confers or involves rights which it does not have; ...

Next, Eller contends that the bank failed to disprove, as a matter of law, her Texas Deceptive Trade Practice Act claim. The latter was founded upon not only the alleged misrepresentation by Nations that the safe-deposit box was indeed a safe and secure place in which to put one's possessions but also the implied warranty of fitness for a particular purpose allegedly inherent in the transaction.[2] To defeat the claim, however, Nations focused upon that prong of the allegation involving misrepresentation and argued that no such misrepresentation occurred. And, because of the absence of any misrepresentation, nothing it did could have been the producing cause of her alleged injury. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.1998) (stating that the alleged deceptive trade practice violation must be a "producing cause" of damage as a condition to recovery). This was not enough to entitle it to judgment as a matter of law, however.

First, to the extent that Nations focused only upon the absence of actual deceptions, and therefore causation, it did not address that portion of the claim based upon breach of implied warranty.[3] As we previously alluded to, the scope of the summary judgment is determined by the motion for summary

5. failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would have not entered had the information been disclosed; and
6. breach of an implied and express warranty of fitness for a particular use.

**3.** This is so because such a warranty arises not from any oral or written statement from the transaction itself. In other words, the law implies its existence given the transaction involved. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 435 (Tex.1997) (stating that an implied warranty consists of a "representation about the implied quality or suitability of a product that the law implies and imports into a contract"). So, the presence or absence of any misrepresentation does not affect whether Eller had a deceptive trade practice claim founded upon a breached implied warranty. *See* TEX. BUS. & COM.CODE ANN § 17.50(a)(2) (recognizing that a deceptive trade practice claim may consist of a breach of an implied warranty).

judgment. If the latter does not address a claim, the court is prohibited from entering or affirming judgment upon the omitted claim. *Sysco Food Serv., Inc. v. Trapnell, supra; McConnell v. Southside School Dist., supra.* So, since Nations did not address the matter of breached implied warranty in its motion or brief, the trial court could not enter summary judgment denying *in toto* the purported violation of the trade practices act.[4]

As to that portion of the deceptive trade practice claim founded upon the absence of any misrepresentations, Nations was attempting to negate an element of Eller's cause of action. Thus, it had the burden to affirmatively prove that it made no misrepresentations to her. *Miller v. Galveston/Houston Diocese,* 911 S.W.2d at 898–99. To the extent that she alleged in her petition that the bank misrepresented that the safe-deposit box was safe and secure, it was incumbent upon Nations to prove it made no such statement. Yet, no evidence was presented illustrating that the bank did not "represent[ ] ... that the safe deposit box was in fact 'safe' and secure," as Eller averred in her petition. Given this, we cannot say that Nations disproved, as a matter of law, the particular allegation. This was another reason why summary judgment should not have been entered upon the deceptive trade practice claim.

### 6. Breached Duty of Good Faith

■ Finally, Eller alleges that the court erred in rejecting her cause of action founded upon breached duty of good faith. Such duty allegedly arose because she lacked bargaining power with the bank *vis-a-vis* the rental of the safe-deposit box, she continued. Thus, a "special relationship" between Eller and Nations purportedly arose which, in turn, obligated the bank to act in good faith. Also, *Plaza Nat'l Bank v. Walker,* 767 S.W.2d 276 (Tex.App.—Beaumont 1989, writ denied) was cited as support for the position. Yet, we find *Plaza* unauthoritative and reject her contention.

First, while *Plaza* held that a bank and its depositors enjoyed the type of special relationship giving rise to duties of good faith and fair dealing, *id.* at 277–78, the opinion reveals no analysis to support the conclusion. Rather, the court simply cited *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987), and recognized that it imposed the duty in question upon parties enjoying "special relationships." *Id.* Yet, *Arnold* dealt with the relationship between an insured and its insurer. It had nothing to do with a debtor/creditor relationship existent between a bank and its depositor, as in *Plaza.* So, it is obvious that *Arnold* did not dictate the result in *Plaza.* Given this, and the complete absence of other discussion explaining why a bank and its depositor should be treated akin to an insurance company and its insured, we are reluctant to assign any weight to *Plaza.*

Second, since *Plaza,* the Texas Supreme Court has reaffirmed the long-settled principle that the duty of good faith does not arise in ordinary commercial transactions. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.,* 960 S.W.2d 41, 52 (Tex.1998). So too has it recognized that the mere relationship of debtor and creditor is not sufficiently special to impose a duty of good faith upon its parties. *Fed. Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708–709 (Tex. 1990). Since the relationship between a bank and its depositor is one of debtor and creditor, *Plaza* has been implicitly overruled.

Third, the commercial relationship at issue here is not that of bank and depositor. Indeed, the dispute involved Eller's renting a safe-deposit box. And, in executing the lease in 1990, statute dictated that she became the bank's lessee. Act of April 26, 1989, 71st Leg., R.S., ch. 30, § 1, 1989 Tex. Gen. Laws 312, *repealed by* Act of June 16, 1995, 74th Leg., R.S., ch. 914, § 26(1), 1995 Tex. Gen. Laws 4551.[5] In other words, the transaction

---

4. This should not be construed as our expressing any opinion about the viability of the implied warranty claim. We merely hold that Nations failed to attack it via its summary judgment motion, which in turn prevented the trial court from rejecting it.

5. The substance of this statute can now be found at § 59.101 *et seq.* of the Texas Finance Code.

created a landlord/tenant relationship, *id.*, as depicted by the expressed terms of the lease itself. Given that a general lessor/lessee relationship is nothing more than an ordinary, arms-length commercial relationship, we must conclude, as a matter of law, that the lessor in that relationship owes no duty of good faith to the lessee.

Fourth, to the extent that Eller asserts that her lack of bargaining power somehow converted the lessor/lessee relationship into that contemplated in *Arnold,* we cannot ignore the pivotal indicia relied upon by the *Arnold* court to reach the conclusion it did. The court focused upon the control exercised by the parties over the subject matter of the agreement. And, because the insurance company was deemed to have exclusive control over the evaluation, processing, and denial of claims, it was decided that the insurer had to act in good faith with regard to the evaluation, processing, and denial of those claims. *Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d at 167. Here, however, the subject matter of the agreement is not over the evaluation and payment of insurance claims, but control over the safe-deposit box and its contents, which by statute lies exclusively in the lessee. Act of April 26, 1989, 71st Leg., R.S., ch. 30, § 1, 1989 Tex. Gen. Laws 312 (repealed 1995) (stating that the lessee "shall be deemed in law for all purposes to be in possession of the box and the content thereof"); TEX. FIN.CODE ANN. § 59.103 (Vernon 1998). So, the pertinent indicia in *Arnold* is non-existent here, as a matter of law. Thus, we cannot say that the allegation of unequal bargaining strength obligated the trial court to deny Nations summary judgment on the claim.[6]

Accordingly, we sustain Eller's point of error in part and reverse that portion of the summary judgment declaring that she take nothing upon her deceptive trade practice claim, sever that claim from the others, and remand it for further proceedings commen-

surate with this court's opinion. However, in all other things, the judgment is affirmed.

DODSON, J., concurs.

DODSON, Justice, concurring.

I am not persuaded under the circumstances presented that Eller states a legally recognized cause of action against the Bank for an alleged breach of an implied warranty claim under D.T.P.A. *See La Sara Grain Co. v. First Nat. Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984). Nevertheless, in its motion for summary judgment, the Bank did not advance that ground for judgment. Accordingly, we cannot affirm the judgment on a ground not stated in the motion. Therefore, I concur with the disposition.

---

**6.** Eller also posits that she enjoyed some type of trust or confidential relationship with Nations because "everyone at the bank knew" her, her husband was once on the "board," and she had "known a lot of other officers and presidents." Yet, we find the argument irrelevant, even assuming the substance of the quotation illustrated

were the stuff of which a confidential relationship is made. This is so because she never raised the particular argument below and therefore waived it on appeal. TEX.R. CIV. P. 166a(c); *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 720 (Tex.App.—San Antonio 1994, writ denied)