

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00013-CV

TAYLOR PLAZA, LLC, APPELLANT

V.

LUCY'S KITCHEN #2 LLC, APPELLEE

On Appeal from the 98th District Court
Travis County, Texas
Trial Court No. D-1-GN-19-006920, Honorable Jessica Mangrum, Presiding

August 27, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Taylor Plaza, LLC appeals from the trial court's judgment in favor of Lucy's Kitchen #2, LLC. Through that judgment, Lucy's was awarded $31,031.56 in actual damages, $35,000 in additional damages under the Texas Deceptive Trade Practices Act (DTPA), and $101,082 as exemplary damages for committing common law fraud. Taylor raises three issues. We affirm.

---

[1] Because this matter was transferred from the Third Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

***Background***

The parties entered a commercial lease for property, with Lucy's as tenant and Taylor as lessor. As part of that agreement, Lucy's tendered a security deposit of $7,084.22, as well as first month's rent of $4,500. The business planned to open a restaurant on the property and began renovating the building to that end. The plans failed, however, when Lucy's encountered a defective, leaking roof covering the edifice, which defects Taylor did not fix.[2] Because the leaking persisted for months, Lucy's terminated the lease and sued Taylor for violations of the DTPA, breach of contract, fraud, promissory estoppel, and money had and received. A jury ultimately found in favor of Lucy's, resulting in entry of the aforementioned judgment.

On appeal, Taylor Plaza argues 1) the exemplary damages awarded for the fraud claim were excessive; 2) Lucy's DTPA claims were barred as a matter of law since they were contractual in nature; and 3) the trial court erred in denying Taylor's motion notwithstanding the verdict.

***Issue One — Exemplary Damages for Fraud***

By its first issue, Taylor Plaza argues the exemplary damages awarded for the fraud claim were excessive and, therefore, violated due process. Allegedly, they failed to satisfy applicable guidelines. We overrule the issue.

A "grossly excessive" exemplary damages award offends due process because it "furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Bennett v. Reynolds*, 315 S.W.3d 867, 873 (Tex. 2010). Three indicia are utilized to

---

[2] The manager of Lucy's contacted the landlord about the issues eight times in writing. Those communications were entered into evidence at trial.

determine whether an award so violates due process. Those indicia are: 1) the reprehensibility of the defendant's conduct; 2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417–18, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003)). We review, de novo, the application of these indicia to the award in issue. *New Horizons Ranch & Ctr., Inc. v. Grebe*, No. 03-23-00525-CV, 2025 Tex. App. LEXIS 1043, at *34 (Tex. App.—Austin Feb. 21, 2025, no pet.) (mem. op.). Furthermore, Taylor's attack invokes only the first two indicia.

Regarding the reprehensibility of Taylor's misconduct, we first note that it did not attack the jury's finding of fraud. In other words, Taylor did not question that it knowingly or recklessly uttered misrepresentations to Lucy's. Second, the fraud concerned the existence and amelioration of the premises defects, that is, the defective roof. Lucy's discovered those defects in December of 2018, and they persisted into May of 2019. Their existence resulted in rainwater entering the premises multiple times as Lucy's attempted to remodel the facility, install appliances, and open the restaurant. Though it repainted the facility, areas on which the rainwater fell required additional repainting. That water also ran across electrical outlets, causing those outlets to pop. Appliances also had to be covered for protection from the rainwater and, apparently, falling ceiling materials. One can reasonably infer that falling tiles and popping electrical outlets posed a risk of personal injury to those experiencing the effects of the defective roof. And,

3

eventually, the expenditures made by Lucy's to renovate and prepare for operations went for naught; Lucy's cancelled the lease after Taylor failed to correct the defects.

Yet, Taylor did not utterly ignore the situation. It is undisputed that the landlord repainted the damaged areas twice at its expense. So too did it attempt roof repairs several times, though they never met with success. Indeed, Taylor actually replaced the roof after Lucy's quit the premises.

The foregoing evidence touches upon the various guideposts utilized in assessing the reprehensibility of a defendant's actions. They include whether 1) the harm inflicted was physical rather than economic; 2) the tortious conduct showed an indifference to or a reckless disregard for the health or safety of others; 3) the party at whom the conduct was directed risked financial vulnerability; 4) the conduct was repetitious, not isolated; and 5) the harm arose from malice, trickery, or deceit, as opposed to accident. *See New Horizons Ranch & Ctr., Inc.*, 2025 Tex. App. LEXIS 1043, at *34–35. Taylor's conduct risked both physical and economic harm. Additionally, the roofing defects and the deficient efforts to cure them were repetitive.

More importantly, Taylor does not question, on appeal, that its misconduct was reprehensible. Instead, it simply suggests that "NONE of the reprehensibility guidepost factors here support an exemplary damages award of $101,082.00 with $31,031.56 in compensatory damages. Rather, the number was pulled out of thin air from Lucy's Trial Exhibit 63."[3] The nominal scope of this argument leaves us to conclude that Taylor does

---

[3] The exhibit reflects an estimate obtained by Lucy's to replace the roof, for which services Lucy's did not contract.

4

not contest the reprehensibility of its conduct, only that it was not so reprehensible as to merit $101,000 in punitive damages.

As for the only other *Bennett* indicia it addressed, Taylor does little more than argue that there is "zero relationship" between "the compensatory damages and the exemplary damages as the calculation for exemplary damages was gathered from a roof repair bid unrelated to compensatory damages in any way." It may be that the jury calculated the amount of punitive damages by looking at the $101,082 sum in the estimate memorialized by Exhibit 63. That sum, however, is slightly over three times the $31,000 awarded in compensatory damages. Taylor said nothing about that 3.2:1 ratio between punitive and compensatory damages. Nor did it make any effort to illustrate the impropriety of such a ratio. Furthermore, it is less than the 4:1 ratio that inches toward lines of constitutional impropriety. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424–25, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (declining to impose a bright line rule and discussing how ratios of 4:1 and higher might be close to the line of constitutional impropriety); *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 811 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (same). We further note that three times compensatory tracks ratios adopted by our legislature. For instance, one may recover up to that ratio when an opponent commits a deceptive trade practice with a particular mens rea. TEX. BUS. & COMM CODE § 17.50(b)(1). And, to that we add 1) Taylor's apparent acknowledgement about the reprehensibility of its conduct and 2) the satisfaction of several guideposts measuring and indicating reprehensibility. Those circumstances taken together lead us to reject Taylor's argument; the $101,082 awarded here as exemplary damages does not transgress due process, as it posits.

5

### *Issue Two — Award of Relief Under DTPA Claim*

Next, Taylor Plaza argues that Lucy's could not prosecute a deceptive trade practice claim since Lucy's claims were contractual. In so contending, it says nothing of § 17.50(a)(2) of the Texas Business and Commerce Code. Per that clause, "a consumer may maintain an action where" a "breach of an express or implied warranty" "constitute[s] a producing cause of economic damages . . . ." TEX. BUS. & COMM. CODE § 17.50(a)(2). The claim underlying Lucy's recovery under the DTPA was one for a breach of implied warranty of suitability. *See Eller v. NationsBank of Texas, N.A.,* 975 S.W.2d 803, 808–809 n.3 (Tex. App.—Amarillo 1998, no pet.) (noting that one may prosecute a DTPA claim based upon the breach of an implied warranty, including one involving the suitability of a product). Thus, Lucy's was free to prosecute the claim of breached warranty under the DTPA, and we overrule the issue.

### *Issue Three — Judgment Notwithstanding Verdict*

Finally, Taylor Plaza argues the trial court erred in failing to grant its motion for judgment notwithstanding the verdict because there was no evidence to support the jury's findings. As with its argument underlying the earlier two issues, that underlying issue three is also rather sparse. For instance, we are left to speculate about the particular jury finding under attack. It expressly mentioned none. Admittedly, Taylor says that "[t]he Supreme Court of Texas has held that in instances where damages were found to be unreasonable, JNOV was the proper mechanism to address the unreasonableness." Yet, no effort was made to specify whether the damages encompassed within that rather indefinite proposition were compensatory or punitive, much less explain why either or both were supposedly "unreasonable." At the very least, any attack upon those awards

6

on the basis of legal sufficiency was waived due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Handy v. 1100 Reinli St. LLC*, No. 07-23-00025-CV, 2023 Tex. App. LEXIS 5629, at *3 (Tex. App.—Amarillo July 31, 2023, pet. denied) (mem. op.) (stating that an issue must be supported by citation to legal authority and substantive analysis, or it is waived).

Nevertheless, we *sua sponte* turned to Taylor's motion for judgment notwithstanding verdict to gain insight on its possible appellate argument. The only grounds itemized there mirrored those asserted under Issues One and Two here. So, if they are the same it now attempts to assert, such remain baseless for the same reasons we specified when overruling Issues One and Two. And, this leads us to overrule Issue Three, as well.

We affirm the trial court's judgment.


Brian Quinn
Chief Justice

Yarbrough, J., concurring.