# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00684-CV

### Sitterle Homes – Austin, LLC, Appellant

### v.

### Amin-Patel Investments, LLC; Jaymini Patel; and Mitesh Patel, Appellees

---

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-16-010128, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Sitterle Homes – Austin, LLC, (Sitterle) appeals from a summary judgment granted in favor of appellees Amin-Patel Investments, LLC;[1] Jaymini Patel; and Mitesh Patel. We will reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Jaymini Patel and Mitesh Patel (collectively, the Patels) purchased a home (the Property) from Sitterle. Sitterle had been using the Property as a model home to market other homes it was building in the area. Sitterle and the Patels agreed that the Patels would lease the Property back to Sitterle for use as a model home for an initial lease period expiring on June 30, 2016. To that end, Sitterle prepared a lease and sent it to the Patels for

---

[1] Amin-Patel Investments, LLC, is a Texas limited liability company whose president is Mitesh Patel and whose sole members are Mitesh Patel and Jaymini Patel.

execution.  The Lease provided for a rental period beginning on the date of closing of the Patels'

purchase of the Property from Sitterle and ending June 30, 2016.  The Lease also provided that:

> Upon expiration of the Rental Period, this Lease shall automatically extend for successive periods of thirty (30) days each (each, an "Option Period" and collectively, the "Option Periods"), on the same terms and conditions as set forth herein, unless Tenant provides Landlord with written notice indicating Tenant's intent to terminate this Lease not later than sixty (60) days prior to the expiration of the Rental Period or applicable Option Period.

The Lease also provided that all required notices must be in writing and sent by (1) United States

Postal Service, postage prepaid, certified, return receipt requested; (2) any nationally known

overnight delivery services; (3) courier; or (4) facsimile transmission; or be delivered in person.

After the closing in April 2016, Sitterle continued to use the Property as a model

home based on the Lease.  On June 24, 2016, Christophe Hardenne, the Sitterle sales representative

who had worked with the Patels in their purchase of the Property, sent Mitesh Patel a text

message that stated:  "Mitesh, the boss decided to move out of the home by the end of the month.

Best[.]"  Mitesh Patel's text message reply stated:  "Okay thanks for the info[.]"  On June 29,

Hardenne sent a text message to Mitesh Patel that stated:  "Will you be ok to have the big move

on July 6th?  Thx."  Mitesh Patel replied with a text stating:  "I can't reference the lease.  Is there

a holdover amount each day after June 30."  Hardenne sent a text back to Mitesh Patel that

stated:  "We will be out tomorrow."[2]  Later that day, Mitesh Patel sent the following text message

---

[2] This text message was preceded by a text message that stated:  "Nope! For the stone?" Because it appears unrelated to the communication between Hardenne and Mitesh Patel, we assume that this text message was mistakenly sent to Mitesh Patel rather than to its intended recipient.

to Hardenne: "Do you know if electric will be turned off July 1st. I totally forgot to activate it under our name." Hardenne replied: "No . . . 5 days after [we] leave."[3]

Sitterle vacated the Property June 30, 2016. After that date Sitterle did not access the Property, and its master key would no longer open the lock once the Patels had used their key to enter the Property.[4] Sitterle paid monthly rent for July, August, and September 2016. Sitterle's representative explained that because Sitterle did not give notice of its intent to vacate the Property until June 24, 2016, and because the Lease required that the notice be given sixty days before the expiration of the initial rental period or any Option Period, Sitterle was obligated to pay additional monthly rent for three thirty-day Option Periods.

Sitterle's president Brian Shields stated in his affidavit that soon after Sitterle vacated the Property on June 30, Mitesh Patel began contacting the company to request that Sitterle address various warranty issues related to the Property. Shields stated that in July 2016, Mitesh Patel requested that a Sitterle representative meet him at the Property to discuss various items on a list of warranty issues. On July 14, Roger Jacoby with Sitterle met with Mitesh Patel at the Property to go over the issues and perform warranty work. Shields stated that at that time Sitterle did not have the ability to enter the Property, and the only way it could perform the requested warranty work was if one of the homeowners met the Sitterle representative at the Property to unlock the door.

---

[3] Hardenne's first text message said, "after you leave," but he sent a second message that said, "We leave."

[4] Sitterle's president, Brian Shields, explained in his affidavit, which was submitted as summary judgment evidence, that it is Sitterle's practice to give a new homeowner a new house key that, once used to open the lock, changes the tumblers in the lock and deactivates any master key. After the new homeowner's use of his key, that is the only key that can be used to unlock the door.

Beginning on July 21, Mitesh Patel and Sitterle exchanged a series of emails regarding additional warranty work. In response to Sitterle's email stating that it was having "tremendous difficulty getting hold of" him, Mitesh Patel replied: "Sorry please have Chad call me at [phone number] to coordinate any work that still needs to be completed. We have not moved in therefore we are not always available at that home." Sitterle and Mitesh Patel continued over the next month to discuss completing the warranty work requested by Patel and, on August 25, Mitesh Patel sent Sitterle the following email:

> chris
>
> access to the home is available anytime he wants in. as you are well aware we have yet to move in due to all the open issues still lingering with sitterle. Also, the house was rekeyed while your people had access to the home and keys were distributed to who knows. It was confirmed that Roger had a set of the new key and maybe even the sales agent.
>
> I see you aren't planning on addressing any items previously agreed upon. Since the ladder stops at you, This leaves us no choice but to seek any and all legal avenues.
>
> This is to confirm, I still expect you to complete all items on your list and Chad will have access to the property at anytime he wishes. All we ask is he inform us 24hours prior with time of access required.

Believing it had satisfied its obligations to provide sixty days' notice of termination of the Lease, and having paid rent for July, August, and September 2016, Sitterle did not make any payments under the Lease in October 2016 or thereafter. In early October 2016, counsel for the Patels sent a letter to Sitterle demanding payment of rent for October. Sitterle responded by letter dated October 11, 2016, that stated: "Please accept this letter as our written notification to terminate the lease agreement at the above referenced property effective June 30, 2016." The next day, counsel for the Patels sent Sitterle a letter stating the following:

4

> Mr. Patel forwarded to me your email with the attached termination notice. The notice indicates that the lease is being terminated effective June 30. I am sure you know that you cannot retroactively terminate the lease—especially when you continued to honor it until recently—and so the termination date is incorrect. Please advise what the termination date should be, keeping in mind that the lease document you prepared calls for at least sixty days prior notice.

> To be clear, Mr. Patel expects the company to honor the lease and pay rent through the date of termination.

On October 24, the Patels sued Sitterle for breach of contract, seeking to recover rent payments for the period from "October 1, 2016 through such date as the contract is found to have been properly terminated," along with attorneys' fees. The Patels alleged that Sitterle failed to provide written notice of termination of the lease based on the Lease's notice provision until its letter dated October 11, 2016, and, consequently, Sitterle was obligated to pay rent through December 2016. Sitterle filed a general denial and asserted several affirmative defenses, including waiver and estoppel. Sitterle filed a counterclaim for breach of the Lease and wrongful eviction, asserting that if, in fact, the Lease was still in effect after June 20, 2016, the Patels breached the lease by taking exclusive possession of, and depriving Sitterle of the sole and exclusive right to possess, the Property.[5]

Amin-Patel Investments and the Patels filed a motion for partial summary judgment on the breach of contract claim against Sitterle and on Sitterle's breach of contract counterclaims. Amin-Patel Investments argued that, as a matter of law, it had established that Sitterle breached the Lease by failing to pay $18,675.00 in rent due for the time period beginning October 2016 through December 2016. The Patels moved for summary judgment on the ground that they were not liable for any breach of the Lease because Amin-Patel Investments, not the

---

[5] The Patels amended their petition to substitute Amin-Patel Investments as the plaintiff after Sitterle asserted that the signatory to the lease was that entity rather than Mitesh Patel and Jaymini Patel individually. Sitterle amended its counterclaim to assert a breach of contract claim against Amin-Patel Investments and not against Jaymini Patel or Mitesh Patel individually.

Patels individually, was the signatory to the Lease. The Patels further asserted that there was no evidence that they had taken any action that could constitute wrongful eviction, that Sitterle had voluntarily vacated the Property, and that both parties to the Lease treated it as if it was ongoing.

Sitterle filed a response to the motion for partial summary judgment to which it attached affidavits and evidence related to the events that transpired between the parties from June 2016 through October 2016. This evidence included the affidavits of Sitterle employees describing communications with Mitesh Patel regarding access to the Property and the warranty work Mitesh Patel requested Sitterle to perform at the Property. After a hearing, the trial court dismissed Sitterle's counterclaims against Mitesh Patel and Jaymini Patel, granted Amin-Patel Investments' motion for summary judgment on its breach of contract claim, and awarded Amin-Patel Investments damages of $20,500.00.

The parties then filed a stipulation as to the amount of attorneys' fees, the only remaining issue, and the trial court rendered a final judgment awarding Amin-Patel Investments damages for breach of contract. The judgment also awarded attorneys' fees jointly and severally to Amin-Patel Investments, Jaymini Patel, and Mitesh Patel. This appeal followed. On appeal, Sitterle argues that the trial court erred in granting summary judgment because the suit was not brought by the proper party, the lease was not supported by adequate consideration, and there were fact issues regarding Sitterle's affirmative defenses to the breach of contract claim. Sitterle asserts that the trial court erred in awarding attorneys' fees to Mitesh Patel and Jaymini Patel individually.

**DISCUSSION**

A party moving for a traditional motion for summary judgment has the burden of proving that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546,

548 (Tex. 1985). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A plaintiff moving for summary judgment is not under any obligation to negate affirmative defenses. *Woodside v. Woodside*, 154 S.W.3d 688, 691 (Tex. App.—El Paso 2004, no pet.). An affirmative defense will, however, prevent the granting of summary judgment if each element of the affirmative defense is supported by summary judgment evidence. *Kirby Expl. Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). A nonmovant raising an affirmative defense in opposition to a motion for summary judgment need not conclusively prove an affirmative defense. *'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936-37 (Tex. 1972). Rather, he need do no more than raise a fact issue as to each element of an affirmative defense.

Because it is dispositive, we first consider whether Sitterle raised a fact issue as to each element of its affirmative defense that the Patels, and by extension Amin-Patel Investments, waived strict compliance with the notice provision of the Lease in connection with Sitterle's notice of termination such that they are prevented from asserting that Sitterle's June 24 and June 29 text messages indicating that it was vacating the Property were ineffective notice of termination of the Lease. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct). *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied). A waivable right may arise from law or, as in this case, from a contract. *Ford v. Culberston*, 308 S.W.2d 855, 865 (Tex. 1958). Silence or inaction, for a period of time

7

that shows an intention to yield the known right, is enough to prove waiver. *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Waiver is ordinarily a question of fact. *Id.* (citing *Caldwell v. Callender Lake Prop. Owners Improvement Ass'n*, 888 S.W.2d 903, 910 (Tex. App.—Texarkana 1994, writ denied); *Alford, Moroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.)).

Responding to the motion for summary judgment, Sitterle submitted summary judgment evidence regarding Mitesh Patel's conduct in response to its June 24 and June 29 text messages stating that Sitterle would "move out of the home" by the end of the month. We believe this evidence raises a fact issue on waiver. The text messages and email correspondence sent by Mitesh Patel to Sitterle after June 29, 2016, create a fact issue regarding whether he accepted that Sitterle was terminating the Lease and its right to exclusive possession of the Property. In particular, Mitesh Patel: (1) inquired about a "holdover amount" of rent in the event Sitterle did not "have the big move until July 6th"; (2) asked about whether the electricity would be turned off on July 1 since he had forgotten to ask to have the account transferred into his name; (3) repeatedly demanded that Sitterle commence warranty work; (4) informed Sitterle that it could have access to the Property only if it provided notice "24hours prior with time of access required"; and (5) informed Sitterle that the Patels were not always at the Property because they had not moved in "due to all the open issues still lingering with Sitterle."[6] From this conduct, there is a fact issue as to whether the Patels voluntarily and intentionally relinquished their right to notice of termination per the notice provision in the Lease and, instead, accepted Sitterle's text message as effective notice of termination. Because the summary judgment evidence created a

---

[6] Notably, Mitesh Patel did not state that he and Jaymini had not moved into the Property because it was still being leased by Sitterle.

fact issue as to Sitterle's waiver defense, we hold that the trial court erred in granting summary judgment in favor of Amin-Patel Investments.

## CONCLUSION

Because the trial court erred in granting Amin-Patel Investments' motion for summary judgment, we reverse the trial court's judgment and remand the cause for further proceedings.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Reversed and Remanded

Filed:   July 3, 2019